SHEPPARD MULLIN RICHTER & HAMPTON LLP
KENT R. RAYGOR, Cal. Bar No. 117224
DAVID R. GARCIA, Cal. Bar No. 151349
VALERIE E. ALTER, Cal. Bar No. 239905
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6017
Telephone:    (310) 228-3700
Facsimile:     (310) 228-3701
E-mail:         kraygor@sheppardmullin.com
                   drgarcia@sheppardmullin.com
                   valter@sheppardmullin.com

Attorneys for Defendants CONQUEST
STUDENT HOUSING, LLC; BRIAN CHEN;
ALAN SMOLINISKY; CASEY SMITH;
MARIANO BAEZ: and JULIO ORELLANO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNIVERSITY OF SOUTHERN CALIFORNIA, a non-profit corporation and private university; UNIVERSITY GATEWAY DEVELOPMENT, LLC, a Delaware limited liability company; and URBAN PARTNERS, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>CONQUEST STUDENT HOUSING, LLC, a California limited liability company; BRIAN CHEN, also known as Chien-Chih Chen, a individual; ALAN SMOLINISKY, an individual; CASEY SMITH, an individual; MARIANO BAEZ, an individual; JULIO ORELLANO, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. CV 07-5737 ODW (AJWx)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE**<br><br>[FED. R. CIV. P. 12(f)]<br><br>Hearing<br>Date:    Monday, Dec. 17, 2007<br>Time:    1:30 p.m.<br>Place:   Courtroom 11, Hon. Otis D. Wright II presiding |

1

# **TABLE OF CONTENTS**

Page

I. THE ANTI-SLAPP STATUTE APPLIES TO PLAINTIFFS' STATE LAW CLAIMS ........................................................................................... 1

    A. The Principal Thrust Of Plaintiffs' SAC Is A Complaint That Defendants Filed A Series Of Objections With Administrative Agencies And Lawsuits In The Courts. ..................................................... 1

    B. CAL. CIV. PROC. CODE § 425.17 Does Not Apply. ............................... 3

II. PLAINTIFFS DO NOT MEET THEIR BURDEN OF PROVING A LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR STATE LAW CLAIMS ............................................................................................. 5

    A. Each Of Plaintiffs' State Law Claims Is Barred By CALIFORNIA CIVIL CODE § 47(b) As A Matter Of Law. .............................................. 5

    B. Plaintiffs Do Not Allege A *Prima Facie* Claim For Violation Of CAL. BUS. & PROF. CODE § 17200. ......................................................... 6

        1. Plaintiffs Do Not Allege An Injury In Fact That Is Eligible For Restitution. .............................................................................. 6

        2. Plaintiffs' Claim Is Barred By CAL. CIV. CODE § 47(b). .............. 8

    C. Plaintiff Urban Does Not State A *Prima Facie* Claim For Intentional Interference With Contractual Relations (Claims 15 And 16)........................................................................................................ 9

    D. Urban Does Not Allege A *Prima Facie* Claim Of Intentional Interference With Prospective Economic Advantage (Claim 17). ....... 11

III. CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

Federal Cases

*Boone v. Redevelopment Agency of the City of San Jose*,
    841 F.2d 886 (9th Cir. 1988) .................................................................................. 9

*In Re Cirrus Logic Sec. Litig.*,
    946 F. Supp. 1446 (N.D. Cal. 1996) ....................................................................... 7

*Smith v. Pac. Bell Tel. Co.*,
    No. 06-1756, 2007 U.S. Dist. LEXIS 31699 (E.D. Cal. April 13, 2007) ............... 7

State Cases

*1-800 Contacts v. Steinberg*,
    107 Cal. App. 4th 568 (2003) ............................................................................ 8, 9

*Barrett v. Rosenthal*,
    40 Cal. 4th 33 (2006) .............................................................................................. 2

*Blanchard v. DirectTV, Inc.*,
    123 Cal. App. 4th 903 (2004) ........................................................ 5, 6, 9, 11, 12

*Briggs v. Eden Council for Hope & Opportunity*,
    19 Cal. App. 4th 1106 (1999) ................................................................................ 1

*Brill Media Company, LLC v. TCW Group, Inc*,
    19 Cal. App. 4th 1106 (1999) ................................................................................ 5

*Buckland v. Threshold Enterprises, Inc.*,
    155 Cal. App. 4th 798 (2007) ................................................................................ 7

*Cayley v. Nunn*,
    190 Cal. App. 3d 300 (1987) ................................................................................. 6

*DuPont Merck Pharm. Co. v. Superior Court*,
    78 Cal. App. 4th 562 (2000) .................................................................................. 1

*Flatley v. Mauro*,
    39 Cal. 4th 299 (2006) .................................................................................... 6, 10

*Gallanis-Politis v. Medina*,
    152 Cal. App. 4th 600 (2007) .............................................................................. 10

*Hartless v. Clorox Co.*,
    2007 WL. 324520 (S.D. Cal. Nov. 2, 2007) .......................................................... 7

*Kashian v. Harriman*,
    98 Cal. App. 4th 892 (2002) ............................................................................. 6, 9

*Kimmel v. Goland*,
    51 Cal. 3d 202 (1990) .......................................................................................... 10

*Korea Supply Company v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) .................................................................................. 7

*Ludwig v. Superior Court*,
   37 Cal. App. 4th 8 (1995) ................................................................. 2, 6, 10, 12

*Macias v. Hartwell*,
   55 Cal. App. 4th 669 (1997) ........................................................................... 2

*Martinez v. Metabolife Internat., Inc.*,
   113 Cal. App. 4th 181 (2003) ......................................................................... 1

*Monolithic Power Systems v. O2 Micro Int'l*,
   2007 WL. 801886 (N.D. Cal. Mar. 14, 2007) ................................................ 7

*Rubin v. Green*,
   4 Cal. 4th 1187 (1993) ...................................................................... 8, 10, 11

*Silberg v. Anderson*,
   50 Cal. 3d 205 (1990) ..................................................................................... 6

*Sunset Millennium Associates, LLC v. LHO Grafton Hotel, L.P.*,
   146 Cal. App. 4th 300 (2006) ..................................................................... 4, 5

*Umansky v. Urquhart*,
   84 Cal. App. 3d 368 (1978) ............................................................................ 6

*Westlake Comty. Hosp. v. Superior Court*,
   17 Cal. 3d 465 (1976) ................................................................................... 10

Federal Statutes

Fed. R. Civ. P. 12(f) ............................................................................................ 1, 12

State Statutes

CAL. CIV. PROC. CODE § 425.16 ...................................................................... 1, 3, 12

CAL. CIV. PROC. CODE § 425.17 ................................................................... 1, 3, 4, 5

CAL. CIV. CODE § 47(b) ................................................................................. *passim*

CAL. BUS. & PROF. CODE § 17200 ................................................................. *passim*

CAL. BUS. & PROF. CODE § 17204 ............................................................................ 4

Other

RESTATEMENT 2D OF TORTS, § 767, comment h ....................................................... 11

# I.

# THE ANTI-SLAPP STATUTE APPLIES TO PLAINTIFFS' STATE LAW CLAIMS

## A. The Principal Thrust Of Plaintiffs' SAC Is A Complaint That Defendants Filed A Series Of Objections With Administrative Agencies And Lawsuits In The Courts.

The anti-SLAPP statute applies where protected speech or petitioning activity is the thrust or gravamen of a plaintiff's claims. *Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 188 (2003) ("We conclude it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies"). As Defendants outlined in their opening papers, the anti-SLAPP statute clearly applies to each of Plaintiffs' state-law causes of action because each of them arises from such protected speech or petitioning activity.

For example, Plaintiffs assert a Section 17200 claim (Claim 14), alleging that the Conquest Defendants initiated and maintained "frivolous sham inquiries or objections to Urban projects." [SAC ¶ 304(g).] These "inquiries or objections," however, are nothing but petitions in the legislative and judicial branches by another name, and, therefore, fall within the scope of the anti-SLAPP statute. *DuPont Merck Pharm. Co. v. Superior Court*, 78 Cal. App. 4th 562, 566 (2000) ("Defendant's . . . activities seeking to influence the decisions of regulatory and legislative bodies fall within" the anti-SLAPP statute); *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. App. 4th 1106, 1115 (1999) (noting that administrative matters are considered petitioning activities for purposes of Section 425.16). Plaintiffs also allege that the Conquest Defendants made misleading statements about University Gateway "over the Internet" and "in fliers." [SAC ¶ 304(h)(1).] These alleged statements are also within the scope of the anti-SLAPP statute because they were made in a public forum in connection with an issue of public interest, the University Gateway project, which

was the subject of discretionary governmental approvals. *See*, *e.g.*, *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 (2006) ("Web sites accessible to the public, like the 'newsgroups' where Rosenthal posted Bolen's statement, are "public forums" for purposes of the anti-SLAPP statute."); *Macias v. Hartwell*, 55 Cal. App. 4th 669, 674 (1997) ("Speech by mail, *i.e.*, the mailing of a campaign flyer, is a recognized public forum under the SLAPP statute."); *Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 14 (1995) ("The development of the Barstow mall, with potential environmental effects such as increased traffic and impaction on natural drainage, was clearly a matter of public interest."). Plaintiffs cannot seriously contend, having made these allegations in their SAC, that their Section 17200 claim is not subject to the anti-SLAPP statute.

The same is true of Urban's claims for intentional interference with contractual relations (Claims 15 and 16). With respect to the University Gateway project and contractor Clark Construction ("**Clark**"), Urban alleges that the Conquest Defendants challenged the Environmental Impact Report ("**EIR**") on the University Gateway project, and when those challenges were unsuccessful, appealed to the courts. [SAC ¶¶ 11, 61, 316.] With respect to the Verdugo Gardens project and contractor 17910 Burbank, LLC, Urban alleges that "the Conquest Defendants began appearing and objecting to the Verdugo Gardens Project." [SAC ¶ 120.] Urban further alleges that the Conquest Defendants "appealed the decision of the Planning Commission" and filed a CALIFORNIA ENVIRONMENTAL QUALITY ACT ("**CEQA**") lawsuit. [SAC ¶¶ 122-23.] As Urban's interference with contractual relations claims are explicitly based on the Conquest Defendants' aforementioned petitioning activities, they are subject to the anti-SLAPP statute.

Finally, Urban's claim for interference with prospective economic advantage (Claim 17) also falls within the scope of the anti-SLAPP statute. Although Urban argues in its Opposition to Defendants' anti-SLAPP motion that this claim is not based on the Conquest Defendants' petitioning activities, Urban ignores the fact that it simultaneously argues to the contrary in its concurrently filed opposition to

Defendants' 12(b)(6) motion, where it states that the basis for this claim is the Conquest Defendants' allegedly "frivolous challenges to the Herald Examiner project." [Oppo. to 12(b)(6), at p. 24.][1]  Urban, therefore, has admitted that this cause of action also arises from Defendants' petitioning activities, and therefore falls within the scope of the anti-SLAPP statute.[2]

B.  **C**AL. **C**IV. **P**ROC. **C**ODE § 425.17 Does Not Apply.

As Plaintiffs point out, CALIFORNIA CODE OF CIVIL PROCEDURE § 425.17(c) exempts certain limited types of commercial speech from the anti-SLAPP provisions of Section 425.16.  However, that exemption does not apply here.  Specifically, Section 425.17 provides that Section 425.16 does not apply to a claim brought against a defendant "primarily engaged in the business of selling or leasing goods or services," *provided that two conditions exist*.  CAL. CIV. PROC. CODE § 425.17(c). *First*, the defendant's speech must "consist[] of statements of fact about the [defendant's] or a business competitor's . . . goods" that is either (a) "made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the [defendant's] goods or services" or (b) "made in the course of delivering the [defendant's] goods or services."  *Id.* Section 425.17(c)(1).

---

[1] Because Defendants' reply in support of their anti-SLAPP motion references both Plaintiffs' oppositions to Defendants' anti-SLAPP motion and their 12(b)(6) motion, this brief references Plaintiffs' anti-SLAPP opposition brief as "Oppo." and their opposition to the 12(b)(6) motion as "Oppo. to 12(b)(6)."

[2] Plaintiffs also assert that the anti-SLAPP statute does not apply because "Defendants' threats and extortion are not protected activity." [Oppo. at 3.]  This argument is simply a distraction.  As shown in the main text, the principle thrust of the SAC is Defendants' petitioning activities, not the allegations of "extortion" sprinkled through the SAC in a transparent attempt to try to avoid anti-SLAPP liability.  Those allegations do not remove Plaintiffs' SAC from the scope of the anti-SLAPP statute.

In addition, to the extent that Plaintiffs imply that Defendants' anti-SLAPP motion addressed Plaintiffs' *federal* claims—such as their RICO claims—Plaintiffs are mistaken. [Oppo. at 5.]  Defendants recognize that the federal claims based on extortion are beyond the scope of the anti-SLAPP statute, and, therefore, appropriately focused on Plaintiffs' state law claims.

*Second*, the defendant's statements must either (a) be made to "an actual or potential buyer" or (b) arise "out of or within the context of a regulatory approval process, proceeding, or investigation." *Id.* Section 425.17(c)(2).

Defendants' petitioning activities—whether in the form of judicial or administrative actions or attempts to mobilize the general public against the University Gateway project—do not fall within the scope of Section 425.17(c)(1) because those activities were not undertaken "for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the [Defendants'] goods or services" or "in the course of delivering the [Defendants'] goods or services." CAL. CIV. PROC. CODE § 425.17(c)(1). Rather, Defendants' statements were made for the purpose of *defeating Plaintiffs'* environmental approval for various real estate development projects.

*Sunset Millennium Associates, LLC v. LHO Grafton Hotel, L.P.*, 146 Cal. App. 4th 300 (2006), is particularly instructive, and decisive, here. There, the plaintiff and defendant were competing hotel operators who had previously agreed not to challenge any expansion of the other's hotels. The plaintiff wished to expand its hotel and sought approval from the City. The defendant "objected to the approval of an environmental impact report," and when the city approved the report, the defendant "filed an unsuccessful administrative mandate petition challenging the issuance of the environmental report." 146 Cal. App. 4th 300. The plaintiff then sued, claiming that the defendant had violated their agreement not to challenge one another's expansion plans. The defendant brought an anti-SLAPP motion, and the plaintiff claimed that the anti-SLAPP procedure was unavailable pursuant to Section 425.17(c).

The Court held that the defendant satisfied the first part of Section 425.17(c)(1) in that it had made statements about a competitor's business operations. *Id.* at 313. The Court, however, held that the plaintiff could not satisfy the second part of Section 425.17(c)(1) because "[t]he statements made during the administrative and litigation process were in an effort to forestall environmental approval of *plaintiff's*

4

2004 project; not for the purpose of promoting *defendant's* hotel 'goods and services' as the phrase is used in section 425.17(c)(1)." *Id.* (emphasis added). Here, too, Defendants' statements were made to "forestall environmental approval of [Plaintiffs'] project[s]; not for the purpose of promoting [*Defendants'* housing] 'goods and services' as the phrase is used in section 425.17(c)(1)." Thus, Section 426.17 does not bar the application of the anti-SLAPP statute to Plaintiffs' SAC.[3]

## II.
## **PLAINTIFFS DO NOT MEET THEIR BURDEN OF PROVING A LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR STATE LAW CLAIMS**

### **A.  Each Of Plaintiffs' State Law Claims Is Barred By CALIFORNIA CIVIL CODE § 47(b) As A Matter Of Law.**

"The litigation privilege is simply a test of connectedness or logical relationship to litigation." *Blanchard v. DirectTV, Inc.*, 123 Cal. App. 4th 903, 919 (2004). Communications are connected to petitioning activity—and therefore privileged—if they have *some reasonable relevancy* to the subject matter of the

---

[3] Plaintiffs' argument that the "statements and conduct were made or engaged in by the Conquest Defendants to promote their own business interests by maintaining their monopoly over the student housing market and to exclude others such as Urban, TMG, and FPM from that market" is directly contrary to the findings in *Sunset Millennium*, which Plaintiffs do not attempt to distinguish, or even acknowledge. [Oppo. at 8.]

Plaintiffs' citation to *Brill Media Company, LLC v. TCW Group, Inc.* does not change this conclusion because there "the challenged statement or conduct was made in the course of delivering the person's goods or services within the meaning of" Section 425.17(c)(1). 132 Cal. App. 4th 324, 341 (2005). The Court did not discuss the portion of Section 425.17(c)(1) that Plaintiffs seek to rely on here, which involves whether Defendants' statements were "made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the [defendant's] goods or services."

5

petition. *Silberg v. Anderson*, 50 Cal. 3d 205, 220 (1990).[4] Once this connection is established, Section 47(b) applies, even if the plaintiff alleges that the defendant's communications were fraudulent, perjurious, unethical, or even illegal. *Kashian v. Harriman*, 98 Cal. App. 4th 892, 920 (2002).[5] Moreover, the "privilege applies without regard to motives, morals, ethics or intent." *Blanchard*, 123 Cal. App. 4th at 922 (quotations omitted).

As explained in more detail below, each of Plaintiffs' state-law claims is barred by Section 47(b) because the acts that form the basis for them are communications connected to Defendants' petitioning activities in judicial and administrative fora. *See Silberg*, 50 Cal. 3d 205. Those communications, therefore, are privileged, and Plaintiffs cannot meet their burden of establishing that they will prevail on the merits of their state-law claims. *See Blanchard*, 123 Cal. App. 4th 903.

## B. Plaintiffs Do Not Allege A *Prima Facie* Claim For Violation Of Cal. Bus. & Prof. Code § 17200.

### 1. Plaintiffs Do Not Allege An Injury In Fact That Is Eligible For Restitution.

Plaintiffs attempt to incorporate by reference the portion of their Opposition to Defendants' 12(b)(6) motion that addresses the fact that they lack standing to bring a

---

[4] Despite Plaintiffs' assertion to the contrary [Oppo. at 12], the Court may determine as a matter of law that Defendants' communications are sufficiently connected to their petitioning activities to trigger Section 47(b) where the connection is apparent on the face of the pleadings. *See Cayley v. Nunn*, 190 Cal. App. 3d 300, 305 (1987).

[5] In fact, the California Supreme Court has recognized that applying the privilege "to some forms of unlawful litigation-related activity may advance those broad goals [of California Civil Code § 47(b)] notwithstanding the 'occasional unfair result' in an individual case." *Flatley v. Mauro*, 39 Cal. 4th 299, 324 (2006). *See also Ludwig*, 37 Cal. App. 4th at 24 (noting that the policy of "encouraging free access to the courts over the interest in being free from damaging activities" supports the expansive application Section 47(b)). Thus, the courts have uniformly held that the privilege should be "liberally construed." *Umansky v. Urquhart*, 84 Cal. App. 3d 368, 372 (1978).

6

UCL claim. [Oppo. at 20, n.8.] Plaintiffs' purported incorporation by reference from another document of substantive argument is procedurally improper and must be rejected as an improper attempt to avoid this Court's page limitations. *See In Re Cirrus Logic Sec. Litig.*, 946 F. Supp. 1446, 1471 n.16 (N.D. Cal. 1996). Because Plaintiffs have failed to properly respond to the standing issue in their opposition to the anti-SLAPP motion, it should be deemed conceded, and their UCL claim must fail for lack of standing. *Smith v. Pac. Bell Tel. Co.*, No. 06-1756, 2007 U.S. Dist. LEXIS 31699 at *2 (E.D. Cal. April 13, 2007) ("Plaintiff does not respond to this ground for dismissal. Accordingly, Plaintiff concedes that dismissal of these causes of action against Defendants Spencer and Brown is required.").

To the extent that Plaintiffs' incorporation by reference is permitted to stand, Plaintiffs *admit* in their Opposition to Defendants' 12(b)(6) motion that they have paid no money to Defendants for which they are entitled to restitution, but nonetheless assert that they sufficiently allege a Section 17200 claim. [Oppo. to 12(b)(6), at 22.] Plaintiffs' argument conflicts with Section 17204, which limits UCL standing to individuals who have suffered an injury in fact *and* losses of money or property *that are eligible for restitution*. *See Buckland v. Threshold Enterprises, Inc.*, 155 Cal. App. 4th 798, 817 (2007).[6] Losses are eligible for restitution only where the relief sought would *replace* money *taken directly* from plaintiff (the so-called "direct victim" theory), or where the plaintiff has a *vested interest* in the money it seeks to recover. *Korea Supply Company v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). Plaintiffs, however, do not claim that the money or property that they allegedly lost was taken directly from them by Defendants, nor do they allege that

---

[6] Plaintiffs cite to *Monolithic Power Systems v. O2 Micro Int'l*, 2007 WL 801886 (N.D. Cal. Mar. 14, 2007), and *Hartless v. Clorox Co.*, 2007 WL 324520 (S.D. Cal. Nov. 2, 2007), for the proposition that a party is not required to have "paid money directly to the defendant" to have standing to pursue a UCL claim. [Oppo. at 22.] These cases, to the extent that they can be read to remove the restitution requirement, are in direct conflict with California law. *Buckland*, 155 Cal. App. 4th at 817.

they had a vested interested in any such property. Thus, plaintiffs are not entitled to restitution, and their UCL claim must be dismissed for lack of standing.

## 2. **Plaintiffs' Claim Is Barred By CAL. CIV. CODE § 47(b).**

Plaintiffs' Section 17200 claim is independently barred by CALIFORNIA CIVIL CODE § 47(b) because it is based on Defendants' conduct in furtherance of their FIRST AMENDMENT right to petition the government. As noted above, Plaintiffs' Section 17200 claim is based on the alleged fact that Defendants allegedly initiated and maintained "frivolous sham inquiries or objections to Urban projects" and made misleading statements about University Gateway "over the Internet" and "in fliers." [SAC ¶¶ 304(g), (h)(1).] Such activities, undertaken in furtherance of Defendants' right to petition, are immunized by Section 47(b). *1-800 Contacts v. Steinberg*, 107 Cal. App. 4th 568, 581, 593 (2003) (legislative privilege applies to statements made in connection with legislative proceedings and to mobilize others to take action); *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993) ("For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b)(2).").

Plaintiffs now attempt to distance their Section 17200 claim from these SAC allegations, stating that their claim is set against a "factual backdrop of administrative and litigation proceedings," but that "the proceedings themselves are based on fraudulent and extortionate activities." [Oppo. at 18.] Specifically, Plaintiffs claim that Defendants initiated proceedings with ill motives and did not inform the administrative agencies and courts before which they appeared of their alleged ill motive. [Oppo. at 18-19.][7] Plaintiffs' argument fails because, as noted above, (1)

---

[7] Plaintiffs also claim that Section 47(b) does not bar their Section 17200 claim because the Conquest Defendants allegedly violated several federal laws, specifically the SHERMAN ACT and RICO ACT. [Oppo. at 18.] This argument is a dead end for Plaintiffs because, as explained in Defendants' 12(b)(6) motion to dismiss those

8

Section 47(b) applies even to fraudulent, perjurious, unethical, or illegal communications in connection with petitioning activity, and (2) § 47(b) is intent-neutral. *Kashian*, 98 Cal. App. 4th at 920; *Blanchard*, 123 Cal. App. 4th at 922.

Plaintiffs also attempt to recharacterize Conquest's legitimate and protected attempts to mobilize and engage the public in an organized political opposition as "misleading" and "unfair." [Oppo. at 20.] However, such community-based petitioning activities—which lie at the heart of our democratic system—are protected by Section 47(b) even if the communications used in support of them are misleading, unfair, or even illegal. Section 47(b) provides ***absolute*** immunity to statements made in an attempt to mobilize the public (which necessarily includes third parties) to participate in the political process. *1-800 Contacts*, 107 Cal. App. 4th at 581. Thus, Plaintiffs' Section 17200 claim is barred by Section 47(b) and should be stricken.[8]

## C. Plaintiff Urban Does Not State A *Prima Facie* Claim For Intentional Interference With Contractual Relations (Claims 15 And 16).

Urban fails to allege a *prima facie* claim for intentional interference with contractual relations because its claims are barred by Section 47(b). As noted above, Urban's interference claims are based on Defendants' challenges to the University Gateway and Verdugo Gardens projects. [SAC ¶¶ 11, 16, 120, 122-23, 316.] These challenges are petitioning activities that are within the scope of the anti-SLAPP statute and are absolutely privileged by Section 47(b). *Rubin v. Green*, 4 Cal. 4th

---

claims, they are utterly without merit. Plaintiffs cannot, as they attempt to do here, bootstrap their meritless Section 17200 claim to their meritless federal claims.

[8] Plaintiffs also argue that the Conquest Defendants' alleged attempt to "bribe individuals," specifically one Steve Strouth, to oppose University Gateway and other Urban projects" takes this case outside the scope of Section 47(b). [Oppo. at 19.] However, even if these allegations were true, which Defendants deny, the Ninth Circuit has recognized that financial inducements to petition the government are not prohibited, noting that "[f]ormer government officials are often times hired by organizations seeking to petition government. Their expertise makes them particularly well suited for such a role." *Boone v. Redevelopment Agency of the City of San Jose*, 841 F.2d 886, 895 (9th Cir. 1988).

9

1187, 1193 (1993) ("For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b)(2).").

Urban makes two arguments to the contrary, neither of which helps it. *First*, Urban claims that Section 47(b) does not apply because "[t]he act of initiating the litigation itself—together with a host of other actions—is the act that is fraudulent, extortionate, and non-privileged." [Oppo. at 14.] Urban is wrong as a matter of law: the act of initiating a lawsuit is ***absolutely privileged***. *Ludwig*, 37 Cal. App. 4th at 24 ("The court has consistently and forcefully reiterated that the privilege is virtually absolute and that the only tort cause of action which can be *based upon the initiation of a lawsuit* (or communicative acts related to the lawsuit) is that of malicious prosecution." (emphasis added)). *See also Gallanis-Politis v. Medina*, 152 Cal. App. 4th 600, 609 (2007) (holding that filing a lawsuit is "communicative conduct" for purposes of Section 47(b)).[9] *Second*, Urban again argues that Section 47(b) does not apply because Defendants pursued their petitioning activities with ill motives. [Oppo. at 15.] However, Defendants' motive is irrelevant and cannot strip their conduct of Section 47(b) immunity. *Blanchard*, 123 Cal. App. 4th at 922.[10]

---

[9] Urban argues that the act of filing a lawsuit is not protected by Section 47(b) because it is separable from the communications within the lawsuit, and cites three cases. None of those cases supports Urban's proposition. The first case, *Kimmel v. Goland*, 51 Cal. 3d 202, 211-12 (1990), held that the separate, out of court, criminal recording of conversations is not subject to the Section 47(b) privilege. The essence of the Court's holding was that Section 47(b) applies to the use of illegally gathered evidence in the context of litigation, but does not protect the illegal gathering of the evidence itself when that activity was not undertaken in good faith anticipation of litigation. The second case, *Westlake Comty. Hosp. v. Superior Court*, 17 Cal. 3d 465, 481-82 (1976), is similarly inapposite. *Westlake* considered out-of-court malicious employment actions that resulted in the curtailment of staff privileges, and held that Section 47(b) does not apply to out-of-court conduct not undertaken in contemplation of litigation. Finally, *Flatley v. Mauro*, 39 Cal. 4th 299, 322, 300 (2006), held that the anti-SLAPP statute does not apply where the complaint alleges extortion, but did not reach the issue of whether such activity would be subject to the absolute litigation privilege contained in Section 47(b).

[10] Urban also argues that its interference with contractual relations claim should not be stricken because it is based on more than the Conquest Defendants' petitioning

**D.      Urban Does Not Allege A *Prima Facie* Claim Of Intentional Interference With Prospective Economic Advantage (Claim 17).**

Urban's claim for intentional interference with prospective economic advantage is immunized by Section 47(b) because, as Urban argues in opposition to Defendants' 12(b)(6) motion, the basis of this claim is the Conquest Defendants' allegedly "frivolous challenges to the Herald Examiner project." [Oppo. to 12(b)(6) at 24.] "Challenges" is simply a code word for Defendants' petitioning activities in the courts and administrative agencies, and any claim based on them is immunized by Section 47(b). *Rubin*, 4 Cal. 4th at 1193.

As with its interference with contractual relations claims, Urban argues that Section 47(b) does not apply to this prospective economic advantage claim because Defendants brought their challenges to the Herald Examiner Project with ill motives. [Oppo. at 13.] As noted repeatedly, however, Defendants' motive is irrelevant and cannot strip Defendants' conduct of its Section 47(b) immunity. *Blanchard*, 123 Cal.

---

activities. Urban claims that the Conquest Defendants made statements "to nonparties to the litigation that created a fear of new and continuing adverse actions by the Conquest Defendants." [Oppo. at 16.] Specifically, Urban alleges that that the Conquest Defendants informed TMG, a third party unrelated to either 17910 Burbank (the contractor on the Verdugo Gardens project named in the SAC) or Clark (the contractor on the University Gateway project named in the SAC), "that they had successfully delayed . . . the University Gateway Project and other Urban Projects." [Oppo. at 17.] They allegedly made similar statements to FPM and the managing director of Cityview, also entities with no apparent connection to 17910 Burbank or Clark. [*Id.*]

Urban's argument is perplexing. The Conquest Defendants' alleged statements to TMG, FPM, and Cityview have no connection to 17910 Burbank or Clark, the entities with whom the Conquest Defendants allegedly interfered, nor does Urban even attempt to assert such a connection. It defies reason that statements to these third parties, whether made in connection with litigation or otherwise, could have given rise to a claim for interference with Urban's contracts with 17910 Burbank and Clark. Although Urban appears to claim that the statements to unrelated third parties eventually made their way to 17910 Burbank and Clark, thereby straining Urban's relationships with the latter entities, the connection is too attenuated to state a claim for interference with contractual relations. *See* RESTATEMENT 2D OF TORTS, § 767, comment h.

1 App. 4th at 922. Urban also appears to argue, as it did with respect to its interference
2 with contractual relations claims, that the act of filing a lawsuit is not privileged.
3 Yet, the law could not be clearer: the act of initiating a lawsuit is ***absolutely***
4 ***privileged***. *Ludwig*, 37 Cal. App. 4th at 24. Thus, Urban's claim for intentional
5 interference with prospective economic advantage should be dismissed.

### III.
### <u>CONCLUSION</u>

10 For all of the foregoing reasons, Defendants respectfully request that the
11 Court strike each of Plaintiffs' four (4) California State law causes of action pursuant
12 to Rule 12(f) and CAL. CIV. PROC. CODE § 425.16.

14 Dated: December 10, 2007   SHEPPARD MULLIN RICHTER & HAMPTON LLP

18          By   */s/ Kent R. Raygor*
                 KENT R. RAYGOR

                 Attorneys for Defendants
                 CONQUEST STUDENT HOUSING, LLC;
                 BRIAN CHEN; ALAN SMOLINISKY;
                 CASEY SMITH; MARIANO BAEZ: and
                 JULIO ORELLANO

400594562.2